**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0205-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHELLE J. HURLEY,

    Defendant-Appellant.

_____

Submitted February 25, 2025 – Decided March 10, 2025

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-05-0665.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, and Khyzar Hussain, Legal Intern, on the brief).

PER CURIAM

Defendant Michelle Hurley appeals from the July 5, 2023 Law Division order denying her petition for post-conviction relief (PCR) after an evidentiary hearing. Defendant contends she has demonstrated ineffective assistance of counsel (IAC) warranting reversal of her convictions and sentence because trial counsel failed to: present her psychological expert's testimony at trial, submit the expert's opinion at sentencing, and prepare defendant to testify. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

We incorporate the facts and procedural history set forth in our prior opinion, affirming defendant's convictions and sentence on direct appeal. State v. Hurley, No. A-4707-l8 (App. Div. Mar. 15, 2022) (slip op. at 1-2). We only recite the pertinent facts to the present appeal.

In the late evening of September 28, 2015, defendant strangled her husband David Hurley,[1] resulting in his death. They resided together in their Bayonne marital residence but slept in separate bedrooms while in the process of a divorce. After a next-door neighbor heard loud female screams, the

---

[1] Because Michelle Hurley and David Hurley share a surname, we refer to David Hurley by his first name for clarity. We intend no disrespect.

neighbor and her husband went to defendant's home to offer assistance. Defendant had called the police and permitted her neighbors in the residence. One of the neighbors went upstairs and observed David "lying unconscious on [defendant's] bed with his head leaning over the foot of the bed."

After Emergency Medical Services responded, paramedics transported David to the hospital. He died ten days later from his injuries. At the scene, defendant admitted to a responding Bayonne Police Department Detective and a Bayonne Police Department Officer that she had wrapped a lamp cord around David's neck after he had tried to force her to have sexual intercourse. Defendant advised the police that she had told David he could only remain in her bed to sleep, but he pushed himself on her and attempted sexual advances.

The medical examiner conducted an autopsy and "determined David's official cause of death was anoxic encephalopathy due to ligature neck compression, with the contributory causes of hypertensive heart disease, obesity, and diabetes." The medical examiner determined David had minimal neck marks because of his poor health.

On May 10, 2016, defendant was charged by indictment with: first-degree murder, N.J.S.A. 2C:11-3(a)(l) and (2); first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); second-degree reckless manslaughter, N.J.S.A. 2C:11-

4(b)(1); second-degree aggravated assault, N.J.S.A. 2C:12-l(b)(l); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

Defendant retained experienced trial counsel who primarily practiced criminal defense. Trial counsel hired Cynthia M. Lischick, Ph.D., L.P.C., D.V.S., as a psychology expert on battering and its effects and Battered Woman Syndrome (BWS). After defendant met with the expert on two occasions, the expert prepared a fifty-seven-page, single-spaced report. The expert opined within a reasonable degree of medical probability that: defendant was "a victim of battering and . . . experienced [a] particular pattern of coercive control" by David; defendant "suffered as a victim of [p]artner . . . , [p]hysical, [p]sychological [and] [s]exual [abuse], . . . which was directly due to . . . [David's] domestic violence"; David's abuse caused her to suffer Post Traumatic Stress Disorder (PTSD), BWS, and other psychological conditions that contributed to defendant's strangulation of David and served as "mitigating factors to her culpability"; and defendant's "experiences of additional traumatic events in her life and symptoms of [PTSD] . . . [we]re likely to have contributed to her actions . . . and c[ould] be considered as further mitigating her culpability."

4

The expert further opined that domestic violence often occurred "behind closed doors," and "documentation is the exception rather than the rule." The expert's report recounted defendant's allegations of David's physical violence and emotional control as well as the psychological tests the expert performed. The expert acknowledged that "the police were called on many occasions, but no arrests were ever made." Additionally, the expert documented multiple police reports that memorialized defendant's intoxication and noted an incident where David bit defendant while they were intoxicated. Although a psychiatrist and mental health therapist treated defendant during her marriage, the expert's report indicated the "records were unavailable" for review. Further, the expert's report included defendant's assertions that: David "was calling police on her all the time"; he had filed for the divorce; she had been using cocaine, which David reported to her son; she was "bold"; and she became financially dependent on David after losing her job.

Trial counsel strategically decided not to call the expert to testify at defendant's first trial. After the jury found defendant not guilty of the murder charge, was deadlocked on the aggravated manslaughter and reckless manslaughter charges, and found defendant guilty of the remaining charges, the State retried defendant on the manslaughter charges. In the second trial, the

A-0205-23

expert did not testify, as trial counsel continued with her strategic recommendation not to call the expert as a witness.

Defendant chose not to testify in both trials. At the first trial, the court copiously inquired defendant about her understanding regarding her absolute right not to testify. The court questioned defendant as follows:

THE COURT: Do you understand that you have an absolute right to testify at trial?

DEFENDANT: Yes.

THE COURT: You have a right, absolute, not to testify as well. You understand that?

DEFENDANT: Yes.

THE COURT: You understand that[ is] your right? It's not [trial counsel's] right. It[ is] your right.

DEFENDANT: Right.

THE COURT: At some point after the State closes during your case before you rest, I[ am] going to ask you whether you have decided to testify or not. Understand if you decide to testify, you would be subject to cross-examination in the same manner and fashion the State's witnesses were by your attorney.

If you decide not to testify, then you have two choices. One, you can ask me to instruct the jury not to use the fact that you did not testify against you. They will be told in essence that you did[ not] testify. You have the right not to testify, that the fact that you did not testify . . . cannot be used in their deliberations, and

6

that you are presumed innocent whether you testify or not, or you could ask me to say nothing.

DEFENDANT: Okay.

THE COURT: All right. As I said, though, it is your right—although I certainly would urge you to discuss it with [counsel]. But ultimately the decision as to whether or not you get on the stand is yours. And I [will] get back to you at some point when it[] is appropriate.

DEFENDANT: Okay.

The trial court revisited defendant's decision to testify, and she advised that she had enough time to decide, did not want to testify, and requested a jury charge regarding her right not to testify.

At defendant's second jury trial, the trial court again informed defendant of her right not to testify and had the following exchange:

THE COURT: As I know you know because I went over it with you at the last trial, you have an absolute right to testify or not to testify, it[ is] your decision. I certainly urge you to consult with counsel before deciding, but [counsel], as you know, [cannot] say you have to testify, and [cannot] tell you you can testify, the decision is ultimately yours. I do[ not] need an answer today but sometime maybe on Tuesday or possibly Wednesday, we may reach the point where it will be the defense's case, and you'll have to make that decision the[n].

Of course[,] if you do testify, you'd be subject to cross-examination, the same way all of the State's

7

witnesses are for you or by your attorney, you understand that.

> THE DEFENDANT: Sure.

The court, revisited defendant's decision whether to testify and had the following exchange:

> THE COURT: You had the opportunity to think [about] whether you wanted to testify or not . . . since we were last here.
>
> . . . .
>
> DEFEENDANT: Oh. Yes. Yes. Yes. Sorry.
>
> THE COURT: You[ have] had the opportunity to speak to [counsel] about it?
>
> DEFENDANT: Yes.
>
> THE COURT: Have you decided whether you want to testify or not?
>
> DEFENDANT: Yes, I have.
>
> THE COURT: And do you?
>
> DEFENDANT: No.
>
> THE COURT: You[ are] not going to testify?
>
> DEFENDANT: No.

Defendant again requested the trial court to instruct the jury regarding her right not to testify.

A-0205-23

On March 14, 2019, a jury acquitted defendant of aggravated manslaughter and convicted her of reckless manslaughter. At defendant's sentencing argument on May 16, trial counsel argued that defendant's reckless manslaughter conviction should be sentenced "to a degree below, specifically to a third-degree." Trial counsel requested the court consider her submission of defendant's answer to David's divorce complaint, which detailed an alleged history of David's abuse, including threats and actions of entering "her room at night when he was drunk." Counsel argued defendant's divorce complaint showed David abused her before she killed him, and counsel highlighted that trial testimony supported that defendant had "strong provocation."

Trial counsel argued for the trial court to apply mitigating factors: three, N.J.S.A. 2C:44-1(b)(3) (defendant acted under a strong provocation); four, N.J.S.A. 2C:44-1(b)(4) (substantial grounds tending to excuse or justify defendant's conduct); seven, N.J.S.A. 2C:44-1(b)(7) (no prior criminal record); eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur); nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude indicated that defendant is unlikely to commit another offense); ten, N.J.S.A. 2C:44-1(b)(10) (defendant was likely to respond to

A-0205-23

probationary treatment) could apply in this case; and twelve, N.J.S.A. 2C:44-1(b)(12) (defendant's willingness to cooperate with law enforcement).

After hearing argument, the court sentenced defendant to an aggregate eight-year prison term subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2, with a three-year term of parole supervision. The trial court found: aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (need to deter); and mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (no prior criminal record).

In addressing defendant's argument that her actions were in self-defense or based on "strong provocation," the trial court found mitigating factor three was inapplicable because defendant demonstrated no "credible evidence . . . support[ing] that" David made "an attempt . . . to . . . commit a sexual assault." The trial court noted the jury rejected defendant's claim of self-defense, and the evidence adduced at trial did not support provocation. It found defendant's statement that there was a struggle, which she made to police after she strangled David, was insufficient "credible evidence." The trial court specifically highlighted that crime scene photographs depicted "very little, if any, physical disturbance evidence[]," and the evidence appeared to be "[in]consistent with someone . . . who . . . would have been defending themselves from an attempted

10

sexual assault." The trial court also stated that defendant's story "did[ not] make sense," because while David's "pants were unbuttoned . . . his pants were[ not] . . . pulled down," and "[h]is underwear was[ not] down." As to mitigating factor four, the trial court found no "credible, competent evidence that established self[-]defense or established any conduct on the part of David . . . that rose to give [defendant] substantial grounds to justify her conduct." The trial court found the aggravating factor outweighed the mitigating factor. Defendant appealed.

On March 15, 2022, we affirmed defendant's convictions and sentence. Id. at 1-19. On November 10, defendant filed a self-represented PCR petition, which PCR counsel thereafter supplemented. Defendant claimed IAC because trial counsel failed to offer the psychological expert's testimony at trial; offer the expert's report and testimony at sentencing; and prepare defendant to testify.

On February 13, 2023, the PCR court heard oral argument regarding defendant's PCR petition and found defendant established a prima facie case of IAC warranting an evidentiary hearing. On April 20, at the PCR hearing, defendant and trial counsel testified.

Defendant testified she told trial counsel about David's abuse and that she wanted the psychology expert to testify to validate that she was a victim of

domestic violence. Defendant recounted that trial counsel decided the expert would not testify without providing any reasons for the decision. Further, defendant explained she had a "deep desire to testify at trial," but trial counsel "unilaterally" decided she would not testify. While defendant acknowledged the decision whether to testify was hers, she blamed her decision not to testify on trial counsel's failure to present the psychology expert "to support [her] defense" and to prepare defendant to give testimony.

Trial counsel testified regarding her representation of defendant and criminal law experience, which included working on homicide cases. Trial counsel explained that she consistently met with defendant, discussed trial strategy, and handled a high volume of motions before representing defendant through two trials. Defendant's trial strategy was to claim self-defense, and David's comorbidities caused his death. Defense counsel secured a medical expert to evaluate David's cause of death, but the expert concurred with the medical examiner's strangulation conclusion. Trial counsel also filed multiple motions to prevent the State from introducing motive evidence based on defendant's financial dependency on David and efforts to collect his life insurance policy.

12

Trial counsel testified about her experience defending domestic violence cases but relayed that this was her first time utilizing a psychology expert on BWS. She asserted the State intended to object to the expert's testimony at trial. After acknowledging that she discussed and recommended defendant not use the expert, trial counsel explained there was no admissible corroborating evidence of domestic violence supporting the expert's opinion. She elaborated that mental health professionals had treated defendant, but their records made no mention of defendant being abused by David. Trial counsel explained her analysis of identifying the risks to defendant if the expert testified and strategy. In her view, opening the door to evidence that supported the State's motive was harmful. Trial counsel believed that defendant's "great concern that the divorce would leave her penniless" and "that she needed to be financially supported" would be admissible if she introduced the expert's testimony. Because defendant admitted to strangling David and was arguing self-defense, trial counsel believed introducing the expert's opinion without corroborating abuse evidence was not worth the risk of revealing the report's other incriminating information that would jeopardize the defense.

In support of defendant's claim of self-defense, trial counsel called defendant's friend at trial to testify about overhearing David yelling at defendant

and his throwing "bottle caps at her."  Trial counsel reiterated, "We had spoken a lot about the expert."  She could not recall defendant's response to her decision not to use the expert, but defendant typically stated that "she trusted [counsel's] judgment."  Trial counsel explained defendant did not always heed her advice and provided an example of when she told defendant to stay home, but defendant instead went to a bar and made inculpatory statements.

In addressing the decision not to introduce the expert's opinions at sentencing, trial counsel reiterated the report contained harmful information, and the court could have viewed defendant as dishonest.  Further, the trial court clearly believed "this was [not] a domestic violence incident."  Trial counsel also addressed defendant's decision not to testify, explaining it was exclusively defendant's decision, but trial counsel strongly advised defendant not to testify because "it would open us up to introducing testimony and evidence that otherwise the State could not introduce that would be harmful."

On November 17, the PCR court issued an order accompanied by a written decision denying defendant's petition.  The PCR court addressed defendant's petition under the PCR framework established under the court rules and the two prong IAC test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), as adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58

14                                                              A-0205-23

(1987). The PCR court copiously addressed each of defendant's contentions and determined defendant failed to meet her burden of demonstrating IAC.

The PCR court credited trial counsel's testimony, finding that she appropriately weighed calling the psychology expert at trial based on multiple considerations, and she consulted with defendant in determining for strategic reasons not to have the expert testify. The PCR court reasoned that trial counsel adequately explained the tactical reasons for not subjecting the expert to cross-examination on issues related to defendant's motive. It concluded trial counsel reasonably believed the expert "would be impeached with a single question" and "would [have become] completely ineffective." The PCR court highlighted that trial counsel had successfully excluded evidence supporting the State's theory that defendant had a financial motive to kill David and noted the expert's testimony would have opened the door to such evidence.

The PCR court further found defendant failed to demonstrate IAC regarding her right to testify. In finding defendant failed to meet her burden, the PCR court stated:

> . . . [trial] counsel provided more than sufficient predicate information as part of the representation not only to advise . . . [defendant] of her guaranteed right to testify, but also provided her with advice as to why she might wish to waive that right. The plenary hearing provided . . . trial counsel with an opportunity to

explain her rationale and also to describe why the decision to testify would be an "absolutely horrible idea." Notwithstanding trial counsel's own observations, . . . [defendant] was characterized by [the BWS] expert as "bold" and as one who would prefer to do what she wanted to do. [Trial] [c]ounsel was concerned that . . . [defendant] would be combative and argumentative. Most importantly, . . . [defendant] might, either on direct or cross-examination, reveal testimony regarding motive that trial counsel was most successful in excluding. If counsel did not provide the advice that she did not recommend that . . . [defendant] not exercise her right to testify, counsel might have been derelict in her duty to . . . [defendant]. This court is satisfied from a review of the record, that . . . [defendant] made her own decision not to testify.

The PCR court determined that trial counsel sufficiently explained that if defendant testified, she would have been cross-examined about her financial concerns and statements. "This would have potentially increased the possibility of conviction on the more serious charges of which she was acquitted." The PCR court concluded that "[i]f trial counsel had not acted as . . . diligently as she did," specifically with suppressing evidence of defendant's financial concerns at trial, "the result would have had potentially catastrophic consequences to [defendant]."

On appeal, defendant raises for our consideration:

<u>POINT I</u>

BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE FROM TRIAL COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR RELIEF.

A. Trial Counsel Wrongly Substituted Her Opinion For That Of The Expert.

    (1) Trial Counsel Did Not Use The Expert At Trial.

    (2) The Expert Report Was Not Presented At Sentencing For Mitigation.

    (3) Trial Counsel Did Not Prepare Defendant To Testify.[2]

II.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." <u>State v. Nash</u>, 212 N.J. 518, 540 (2013); <u>see also</u> <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 373 (App. Div. 2014) ("If a court has conducted an evidentiary hearing on a petition for PCR, we necessarily defer to the trial court's factual findings."). "An appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a

---

[2]  We have renumbered the point headings to comport with our style conventions.

witness he has observed firsthand." State v. Gideon, 244 N.J. 538. 562 (2021) (quoting Nash, 212 N.J. at 540). Therefore, when the trial court holds an evidentiary hearing, we should "uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Id. at 551 (quoting Nash, 212 N.J. at 540). However, "we need not defer to a PCR court's interpretation of the law[,]" which we review de novo. Nash, 212 N.J. at 540-41; see also State v. Harris, 181 N.J. 391, 415-16 (2004).

To succeed on an IAC claim, a defendant must satisfy both prongs of the test set forth in Strickland, 466 U.S. at 687, as adopted by Fritz, 105 N.J. at 58, by a preponderance of the evidence. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The PCR court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced

the defense." Id. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. When petitioning for PCR, the defendant must establish, "by a preponderance of the credible evidence," entitlement to the requested relief. Nash, 212 N.J. at 541 (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). "'To sustain that burden, specific facts' which 'would provide the court with an adequate basis on which to rest its decision' must be articulated." State v. Hand, 480 N.J. Super. 15, 26 (App. Div. 2024) (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)).

## III.

We address together defendant's contentions that she demonstrated IAC because trial counsel failed to have the psychological expert testify at trial and present the expert's opinions at sentencing. Specifically, defendant argues trial counsel unsoundly "rejected a thorough [expert] report" because she did not understand BWS and failed to appreciate that "corroboration of most of the actions of a batterer" is highly unlikely. Defendant further contends these errors support a reasonable probability that defendant's trial outcome would have been different. After the PCR court assessed the credibility of defendant's and trial

counsel's testimony at the PCR hearing, it concluded trial counsel had "effectively represented" defendant, and defendant failed to meet her burden of demonstrating IAC. We discern no reason to disturb that decision.

To begin, trial counsel retained a psychology expert. Trial counsel explained that she heavily weighed the benefit of introducing the expert's opinions against the risk of revealing harmful information contained in the expert's report. A review of the expert's report comports with trial counsel's testimony that it contained a host of harmful information that the State would have used as inculpatory evidence at trial and sentencing against defendant.

We note defendant does not dispute the State's theory of the case was that she killed David for financial reasons. Further, defendant does not contest that the expert's report contains negative information, including that: police were called multiple times to the Bayonne residence and found defendant intoxicated; she had begun using cocaine in 2014; David had filed for the divorce; she was financially dependent on David; she reported to her treating mental health professionals that she had financial concerns; she described herself as "bold"; and other potentially harmful facts. Absent from defendant's PCR arguments is any acknowledgement of the apparent risks presented by the admission of the damaging information at trial and sentencing, especially considering trial

counsel's successful motions to exclude evidence related to the State's theory regarding defendant's financial motives.

The record supports the PCR court's conclusion that trial counsel appropriately determined that use of the expert "would have resulted in more harm . . . than good" after she weighed the admission of the expert's opinions against the other damaging evidence revealed. Defendant has failed to establish that trial counsel's decisions regarding the expert were not sound trial and sentencing strategy. Therefore, affording the PCR court's factual findings deference, we discern no error in its determinations that trial counsel's strategic decisions not to introduce the expert's opinions at trial and sentencing were not deficient, and there was no reasonable probability of a different outcome.

We also reject defendant's IAC argument based on trial counsel's failure to prepare her to testify. As trial counsel acknowledged, the decision to testify was defendant's alone. Defendant chose not to testify at the first trial after accepting trial counsel's advice. Defendant's argument that she chose not to testify because trial counsel failed to properly prepare her for trial testimony rings hallow. After defendant decided not to testify at the first trial, she could have chosen to testify at the second trial and been prepared for examination. The trial court extensively questioned defendant at both trials, and she

responded multiple times that she decided not to testify of her own accord. Again, as the PCR court noted, had defendant testified, the State would have cross-examined her based on its theory regarding her financial motives. For these reasons, the record supports the PCR court's conclusion that defendant failed to meet either Strickland prong.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division